AMERICAN INDUSTRIAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31072.   Promulgated June 30, 1930.

*Alex Koplin, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

McMahon: Among the errors alleged is the contention that be-
cause the petitioner "was organized to liquidate certain proper-
ties * * * no profits can accrue until the liquidation is com-
plete." There is no amplification of this allegation in the petition
but, from the hearing record and the petitioner's brief, it appears
that the petitioner is contending that no profit should be computed
on its operations until they are entirely concluded and that at such
time an accounting should be made and a tax paid only if a taxable
profit results over the span of years that the petitioner operates.

The petitioner's operations began in 1923 and had not been con-
cluded when this proceeding was heard. Upon the petitioner's theory
its tax liability can be projected indefinitely into the future and,
in effect, the Government must assume the hazards of the business
with no share in its management and must await collection of its
revenue until it is the petitioner's pleasure to conclude its opera-
tions. Speaking of an analogous contention, the Board said, in
*Mesta Machine Co.*, 12 B. T. A. 523, 537, that it "would enable
a taxpayer to postpone indefinitely the return of income which
has actually been received, which result in our opinion, is incon-
sistent with the theory of the tax laws."

In *Atkins Lumber Co.*, 1 B. T. A. 317, 320, the Board said:

\* \* \* We cannot overlook the fact that the taxing statutes have been designed to levy income and profits taxes upon the gain and profits of business for annual periods, and that each annual period must necessarily, under the provisions of law, stand by itself \* \* \*.

See also *A. D. McNeil et al.*, 10 B. T. A. 1285, and *Deer Island Logging Co.*, 14 B. T. A. 1027. This contention is, accordingly, denied.

The next point for consideration is covered by three assignments of error. These assignments are that the respondent erred, first, in computing the cost of goods sold; second, in "placing an excessive value on closing inventory"; and, third, in the overstatement of sales. These alleged errors are not related by the petition specifically to any of the years involved and it appears that they were intended to cover the three-year period mentioned in the deficiency letter. It will be recalled that the respondent determined an overassessment for the year 1924, and, therefore, that we have no jurisdiction as to that year. However, the record best lends itself to discussion as if the three years, 1923 to 1925, inclusive, were all before us and we shall consider it on that basis, it being understood that we make no determination respecting the year 1924.

Upon hearing and brief the petitioner's attack is directed at the respondent's computation of the cost of goods sold, which the respondent has determined for each of the three years by dividing the amount of the original purchase price of assets from the Terry Corporation during 1923, i. e., $506,000, by the ratio of net sales for each year to a divisor of $978,100.50 and adding to the figure obtained purchases for each year other than the original purchase. As set out in the deficiency letter, these computations are as follows:

1923

Net sales ___ $465,929.97
Less:
    Purchases, 1923 ___ $64,030.24
    Proportion of original purchase applicable to 1923, $506,000, divided by_ $65,929.97

        978,100.50  241,039.20

Cost of merchandise sales ___ 305,069.44

1924

Net sales ___ 295,430.65
Less: Purchases ___ 22,663.04
    Proportion of original purchase applicable to 1924, $506,000 divided by_ 295,430.65

        978,100.50  152,834.99
Discounts allowed by corp ___ 5,364.48

         180,862.51

1925

Net sales_____ $82, 777. 38
Less:
    Proportion of original purchase appli-
        cable to 1924, $506,000 divided by_____ $82, 777. 38

                                                  978, 100. 50_____ 42, 823. 18

The respondent contends that it was necessary to determine the cost of goods sold by the proportion method because the petitioner had no inventories. The petitioner acquiesces in the respondent's use of the proportion method but objects to the proportion used, or more specifically, objects to the divisor of $978,100.50. The record is largely devoted to the petitioner's efforts to establish what the figure last mentioned represents. The petitioner contends that the figure must have been determined by adding net sales for the three years to get a total of $844,138, and to this sum adding a figure representing the closing inventory at December 31, 1925. Upon this basis the amount added as the closing inventory, i. e., the difference between $978,100.50 and $844,138, was $133,962.50.

The respondent's counsel insistently declares that no inventory was used in arriving at the disputed figure and he leaves the petitioner to its proof of what the figure represents. In our view the classification of the amount added to total net sales to arrive at the figure used as the divisor in the respondent's proportion is not important. Technically, it may not represent an " inventory," but to be properly included in the divisor it must represent either the cost or market value of such property, real and personal, as the petitioner held for sale in the regular course of its business, on December 31, 1925, plus, possibly, accounts and notes receivable not previously reflected in sales and any items included in the petitioner's purchases of merchandise or real estate for sale and then diverted to the petitioner's own uses.

For convenience we shall consider the amount which should properly be added to the total of net sales for the three years as representing " unliquidated property " of the petitioner at December 31, 1925. Since the parties agree that net sales over the three-year period aggregated $844,138, it remains for the petitioner to prove that the amount of $133,962.50 which the respondent included in the divisor as the value of " unliquidated property " at December 31, 1925, is incorrect and to establish the amount which should correctly be so included.

The petitioner contends that its " inventory," or, as we term it, its " unliquidated property," at December 31, 1925, was valued at $25,000. There was no inventory taken at that date nor does it appear that values were assigned to the items singly or collectively at that date, except retrospectively after a revenue agent began an

investigation of the petitioner's returns. The exact date of the investigation mentioned does not appear nor are we advised of the items of personalty involved. Louis Koplin, secretary of the petitioner, was the only witness heard. His testimony as to the value of the "unliquidated property" at December 31, 1925, is shown by excerpts from the record as follows:

Q. What property did the American Industrial Corporation own at that time?
A. It had some miscellaneous personalty, of which a list was furnished to the government with an estimate of its value.
Q. What was that value?
A. I think approximately $12,000 or $15,000.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

Q. What was actually owned by the American Industrial Corporation at that time?
A. Real estate.

The petitioner then sought to prove the assessed value of the real estate, but the evidence offered was rejected as incompetent.

Q. Mr. Koplin, are you familiar with the value of property that was owned by the American Industrial Corporation on December 31, 1925?
A. Yes.
Q. You had some connection with sales made by the company during that period?
A. Oh, yes sir, during the whole time.
Q. What in your opinion was the fair value of the realty and personalty owned by the American Industrial Corporation on December 31, 1925?
A. $25,000.
THE MEMBER: Right there at that point, can you segregate the realty from the rest of it?
A. ＊　＊　＊ There was not very much in the way of personalty, and that list approximated $5,000 of the personalty. Now as to the realty I might explain why it got up to $25,000 in distinction from that tax return, which only shows $10,000.
(The witness refers to a return for city taxes.)
THE MEMBER: The $25,000 figure covers it all?
A. The entire property.
THE MEMBER: So that it follows from that that your valuation on the real estate would be approximately $25,000?
A. $20,000 ＊　＊　＊.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

Q. In answer to a question from the court you stated that an actual physical inventory had been made of the personalty?
A. Yes.
Q. And on that you fixed a value of what figure?
A. $5,000.
Q. Have you got it exact?
A. $4,175.
Q. What other assets were owned by the American Industrial Corporation on December 31, 1925?
A. Probably a few outstanding accounts receivable, most of which are still outstanding, real estate, and at that time the proceeds of a sale made to the Savannah Steel Company which was in the process of foreclosure.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

Q. That is all, unless you have something further?

A. * * * Now, since 1925, we have had, well I should say, ten or fifteen different prospects for the sale of that land, ranging anywhere from a nominal figure of $25,000 up to a figure of $150,000. I think the government sent somebody to buy it for $150,000 myself. We have never been able to sell an acre of that land. * * *

With respect to the land, which embraced approximately 121 acres, the witness further testified that during 1925 the petitioner sold for $1,000 " a little piece of store property " and in response to inquiries the petitioner asked $125,000 and again $110,000 for the whole tract, during that year.

In attacking the respondent's valuation of its " unliquidated property " at December 31, 1925, the petitioner had the burden of proving not only that such valuation was incorrect, but what the correct valuation was. *Helen Pitts Parker*, 14 B. T. A. 1185; *Francis Perot's Sons Malting Co.*, 1 B. T. A. 562. With respect to the personalty, we have not even been advised what property was involved. It may have been locomotives, or it may have been nuts and bolts. An appraisal, and presumably an inventory of this property, was made in 1926 when a revenue agent was investigating the petitioner's tax returns, but the only evidence we have is that the agent and the petitioners' secretary valued the personalty at $4,175. Neither the respondent nor the Board are bound by the conclusions mentioned. Clearly the Board is unable to determine the value of personalty included in the petitioner's " unliquidated property."

We now turn to a discussion of the value of the 121 acres of " back land " included in the " unliquidated property " at December 31, 1925. The petitioner originally acquired approximately 165 acres of land. In 1924 a tract of about 40 acres was sold for $75,000. This 40-acre tract included all the water frontage owned by the petitioner, but we have had no evidence to the effect, and we can not make an assumption, that it was more valuable than the so-called " back land " retained by the petitioner.

The petitioner now asserts that the 121 acres included in the " unliquidated property " had a value of $20,000 on December 31, 1925. In 1925 a portion of the " back land," described as " a small piece of store property," the exact area and the extent of its improvements, if any, not being shown, was sold for $1,000. This " store property " is not identified as the store building and lot mentioned in the conveyance of December 28, 1922. Sometime during 1925 the petitioner, in response to inquiries, placed a price of $125,000 on the 121 acres of " back land." Florida was then experiencing a real estate " boom " and the petitioner, as well as the persons inquiring about the property, considered it possible that the " boom " might spread and involve the petitioner's property. The petitioner had a " lot of

bids " for the property at this time, but we are not advised of the amounts offered.

In our opinion the petitioner's evidence respecting the value of the real property, like that respecting the personal property, has been too general and indefinite to warrant our predication of a finding of value upon it. The result is that the petitioner has failed to establish error in the respondent's determination, i. e., has failed to establish that the divisor used in the proportion by which the respondent computed its net income, was incorrect. We hold, therefore, that the petitioner has not overcome the prima facie correctness of the respondent's determination in this respect, and, accordingly, that determination is approved.

The only allegation of error remaining for discussion is that the respondent failed " to allow expense deduction for attorneys' fees." This deduction is claimed under sections 234 of the Revenue Acts of 1921 and 1924, each providing:

SEC. 234. (a) In computing the net income of a corporation subject to tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *.

The evidence is that no attorneys' fees were paid during the taxable years and there is no evidence that such expenses were accrued during these periods. Furthermore, we have not been offered the slightest intimation, either by the petition or the evidence, of the amount of the deduction claimed. Again the record is too indefinite to permit our affording the petitioner any relief. To be successful the petitioner must offer the Board evidence from which findings of material facts can be made. *Monotype Typesetting & Foundry Co.*, 2 B. T. A. 1312; *J. C. Wilcox*, 2 B. T. A. 1292.

On brief, the petitioner contends that the 5 per cent negligence penalty proposed by the respondent should be disallowed. This contention was not mentioned in the petition and is offered for the first time on brief. We have repeatedly held that issues not raised by the pleadings and set up for the first time in briefs filed after hearing will not be considered. *W. A. Roth*, 4 B. T. A. 834; *H. D. & J. K. Crosswell, Inc.*, 6 B. T. A. 1315; *S. L. Fowler*, 6 B. T. A. 250; *Wm. Fleischaker et al.*, 7 B. T. A. 389; *D. N. & E. Walter & Co. et al.*, 10 B. T. A. 620. In any event the record in this proceeding is not such as would lead us to declare that the respondent's proposal of the 5 per cent penalty for negligence was erroneous.

Reviewed by the Board.

*Judgment will be entered for the respondent.*